**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

------------------------------------------------------------------x
MARCIA CARMITA MONTERO FERNANDEZ,
*on behalf of herself and others similarly situated,*

                                            Plaintiff,      Case No. 24-cv-01988

                  v.                    **CLASS AND COLLECTIVE ACTION COMPLAINT**

L COZY NAILS BEAUTY, INC.
    d/b/a Cozy Nail & Spa,
QIAN LU                                   **JURY TRIAL DEMANDED**
    a/k/a Lucy Lu, and
JUN ZHAO
    a/k/a Vanessa Zhao,

                                        Defendants.
------------------------------------------------------------------x

        Plaintiff MARCIA CARMITA MONTERO FERNANDEZ (hereinafter "Montero" or "Plaintiff"), by and through her attorneys, Troy Law, PLLC, hereby brings this Complaint against Defendants L COZY NAILS BEAUTY, INC. d/b/a Cozy Nail & Spa (hereinafter "Cozy Nail" or "Corporate Defendant") QIAN LU a/k/a Lucy Lu (hereinafter "Lucy"), and JUN ZHAO a/k/a Vanessa Zhao (hereinafter "Vanessa;" hereinafter collectively with Lucy, "Individual Defendants;" Individual Defendants hereinafter collectively with Corporate Defendant, "Defendants"), and alleges as follows:

## INTRODUCTION

        1.     Plaintiff brings this action on behalf of herself and other similarly situated employees of Defendants, against Defendants for violations of the Fair Labor Standards Act ("FLSA"), 20 U.S.C. § 207(a)(1), and of the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-76c, arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and/or practices.

2. Plaintiff alleges pursuant to FLSA that she is entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages or prejudgment interest, (3) reasonable attorneys' fees and costs, and (4) postjudgment interest.

3. Plaintiff alleges pursuant to CMWA that she is entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) liquidated damages, (4) reasonable attorneys' fees and costs, and (5) postjudgment interest.

4. Plaintiff has fulfilled all conditions precedent to the institution of this action, or such conditions have been waived.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a), because they are so related to claims over which this Court has original jurisdiction as to form part of the same case or controversy under Article III of the Constitution.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b), as Defendants reside and do business in the District of Connecticut, and a substantial part of the events or omissions giving rise to the claims herein occurred in the District of Connecticut.

## PLAINTIFF

8. Montero was employed by Defendants from on or about January 30, 2021 through on or about February 15, 2024 to work as a manicurist and pedicurist at Defendants' nail salon, "Cozy Nail & Spa," located at 103 Greenwich Avenue, Rear, Greenwich, CT 06830.

## DEFENDANTS

**CORPORATE DEFENDANT**

9. Cozy Nail was Plaintiff's employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and CMWA, Conn. Gen. Stat. 31-58(d).

10. Cozy Nail was throughout the period relevant to this lawsuit an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r)(1).

11. Cozy Nail was throughout the period relevant to this lawsuit an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A).

12. Cozy Nail is a domestic business corporation organized under the laws of the State of Connecticut, with a registered address for service of process and principal place of business at 103 Greenwich Avenue, Rear, Greenwich, CT 06830.

13. Cozy Nail's business consists of running a nail salon known as "Cozy Nail & Spa" at 103 Greenwich Avenue, Rear, Greenwich, CT 06830.

14. Cozy Nail was, throughout the period relevant to this lawsuit, an enterprise engaged in interstate commerce or foreign commerce with gross annual revenue in excess of five hundred thousand dollars ($500,000.00).

15. On a typical business day during the period relevant to this lawsuit, Cozy Nail received approximately two thousand dollars ($2,000.00).

16. During the period relevant to this lawsuit, Cozy Nail was open seven (7) days per week, fifty-two (52) weeks per year.

17. During the period relevant to this lawsuit, Cozy Nail had gross annual revenue of approximately seven hundred twenty-eight thousand dollars ($728,000.00).

18. Throughout Plaintiff's employment, she and other employees of Cozy Nail handled goods moved in commerce, including nail polish, nail polish remover, bleach, cotton balls, and other supplies.

19. Throughout the period relevant to this lawsuit, Sweet Basil employed about eighteen (18) or nineteen (19) manicurists, pedicurists, waxers, and massagers at any one time.

**INDIVIDUAL DEFENDANTS**

20. Individual Defendants were, jointly with Corporate Defendant and with each other, Plaintiff's employers and the employers of other employees similarly situated to Plaintiff within the meaning of FLSA, 29 U.S.C. § 203(d), and CMWA, Conn. Gen. Stat. 31-58(d), and are liable to Plaintiff and other employees similarly situated as employers.

21. Individual Defendants are members and managers of Corporate Defendant, supervised Plaintiff and other employees of Corporate Defendant, and exercised operational and financial control over Corporate Defendant.

22. Individual Defendants committed the complained-of acts and omissions willfully, intentionally, and maliciously.

*QIAN LU a/k/a Lucy*

23. Throughout the period relevant to this lawsuit, Lucy was the President of Corporate Defendant.

24. Throughout the period relevant to this lawsuit, Lucy had the authority to hire and fire employees of Corporate Defendant.

25. Lucy hired Plaintiff, as well as at least three other employees of Corporate Defendant.

26. From time to time, during the period relevant to this lawsuit, Lucy, together with Vanessa, convened and chaired staff meetings, during which she threatened Plaintiff and other Spanish-speaking employees of Corporate Defendant with discipline, including termination.

27. Throughout the period relevant to this lawsuit, Lucy forbade Plaintiff and other Spanish-speaking employees of Corporate Defendant from discussing the terms and conditions of their employment with each other, and from time to time threatened to both terminate them and blackball them from the nail salon industry if they did so.

28. Throughout the period relevant to this lawsuit, Lucy supervised and controlled Corporate Defendant's employees' work schedules and conditions of employment.

29. Throughout the period relevant to this lawsuit, Lucy determined Plaintiff's schedule.

30. Lucy determined Cozy Nail & Spa's operating hours which, during the period relevant to this lawsuit, were as follows: from 9:30 AM through 7:30 PM Mondays through Thursdays; from 9:30 AM through 7:00 PM on Saturdays; and from 10:00 AM through 6:30 PM on Sundays.

31. Notwithstanding the foregoing operating hours, throughout the period relevant to this lawsuit, Lucy required Plaintiff, and other Spanish-speaking employees of Corporate Defendant, to arrive each working day at about 9:00 AM, and to continue working through about 8:00 PM Mondays through Saturdays, and about 7:00 PM on Sundays.

32. Throughout the period relevant to this lawsuit, Lucy did not permit Plaintiff, and other Spanish-speaking employees of Corporate Defendant, to leave Cozy Nails & Spa at its closing time.

33. Throughout the period relevant to this lawsuit, between Cozy Nails & Spa's closing time, and the time Lucy permitted Plaintiff and other Spanish-speaking employees of Corporate

Defendant to leave work, Lucy required them to clean Cozy Nails & Spa's premises as well as the van Corporate Defendant used to transport employees between its premises and a pickup/dropoff point in New York.

34. From time to time, during the period relevant to this lawsuit, Lucy required Plaintiff and other Spanish-speaking employees of Corporate Defendant to sign documents written in English, without permitting Plaintiff and other Spanish-speaking employees to obtain a translation or otherwise learn what they said.

35. Throughout the period relevant to this lawsuit, Lucy, along with Vanessa, supervised Plaintiff.

36. Throughout the period relevant to this lawsuit, Lucy, along with Vanessa, made sure Plaintiff and other Spanish-speaking employees of Corporate Defendant kept working throughout the working day, denying them sufficient break time to eat meals, drink water, or visit the restroom.

37. Throughout the period relevant to this lawsuit, Lucy regularly sat outside Cozy Nail & Spa's restroom's door to prevent Plaintiff and other Spanish-speaking employees of Corporate Defendant from using it. Other Spanish-speaking employees of Corporate Defendant besides Plaintiff regularly resorted to wearing plastic shopping bags like diapers.

38. On the rare occasions during the period relevant to this lawsuit when Plaintiff and other Spanish-speaking employees did have time to eat meals during the working day, Lucy required them to eat in the chemical storage area, such that they became sick.

39. Throughout the period relevant to this lawsuit, Lucy determined Plaintiff's rate and method of payment, and the rates and methods of payments of other employees of Corporate Defendant.

40. Throughout the period relevant to this lawsuit, Lucy wrote, signed, and gave to Plaintiff her paychecks.

41. Throughout the period relevant to this lawsuit, Lucy was responsible for keeping and maintaining Corporate Defendant's financial and employee records.

### *JUN ZHAO a/k/a Vanessa*

42. Throughout the period relevant to this lawsuit, Vanessa was the registered Agent of Corporate Defendant.

43. Throughout the period relevant to this lawsuit, Vanessa had the authority to hire and fire employees of Corporate Defendant.

44. From time to time, during the period relevant to this lawsuit, Vanessa, together with Lucy, convened staff meetings, during which she threatened Plaintiff and other Spanish-speaking employees of Corporate Defendant with discipline, including termination.

45. Throughout the period relevant to this lawsuit, Vanessa supervised and controlled Corporate Defendant's employees' work schedules and conditions of employment.

46. Throughout the period relevant to this lawsuit, Vanessa, along with Lucy, supervised Plaintiff.

47. Throughout the period relevant to this lawsuit, Vanessa, along with Lucy, made sure Plaintiff and other Spanish-speaking employees of Corporate Defendant kept working throughout the working day, denying them sufficient break time to eat meals, drink water, or visit the restroom.

48. Throughout the period relevant to this lawsuit, Vanessa was responsible for keeping and maintaining Corporate Defendant's financial and employee records.

**STATEMENT OF FACTS**

49. Montero was employed by Defendants from on or about January 30, 2021 through on or about February 15, 2024 to work as a manicurist and pedicurist at Defendants' nail salon, "Cozy Nail & Spa," located at 103 Greenwich Avenue, Rear, Greenwich, CT 06830.

50. Montero's primary duties were to file, paint, and polish customers' finger-and toenails.

51. Montero's primary duties were neither executive, administrative, nor professional.

52. Throughout her employment, Montero regularly worked about sixty-five (65) hours per week: from about 9:00 AM through about 8:00 PM Mondays through Wednesdays and Fridays through Saturdays; and from about 9:00 AM through about 7:00 PM on Sundays.

53. Defendants failed to keep and maintain accurate time-in and time-out records for Montero, or accurate records of Montero's hours worked per day and per week.

54. Defendants maintained a time clock, but did not permit Montero to clock in or out more than occasionally. On those rare occasions when Montero was permitted to clock in and out, Defendants required Montero to clock in at about 10:00 AM even though she had begun working at about 9:00 AM, and required Montero to clock out for one hour in the middle of the day despite requiring Montero to work throughout that time.

55. Upon information and belief, Defendants failed to keep and maintain accurate time-in and time-out records, or accurate records of Montero's hours worked per day and per week, in order to mitigate their liability for wage violations.

56. Throughout her employment, Montero was paid a flat salary of one hundred twenty dollars ($120.00) per day—seven hundred twenty dollars ($720.00) for a six-day (6-day) week.

57. Throughout the period relevant to this lawsuit, Montero's salary amounted to a regular hourly wage of eleven dollars and eight cents per hour ($11.08/hour = $720.00/week / 65 hours/week; *see* 29 C.F.R. § 778.112).

58. Throughout the period relevant to this lawsuit, Montero's regular hourly wage was less than the Connecticut minimum wage: fourteen dollars per hour ($14.00/hour) through May 31, 2023; fifteen dollars per hour ($15.00/hour) from June 1, 2023 through December 31, 2023; and fifteen dollars and sixty-nine cents per hour ($15.69/hour) on and after January 1, 2024.

59. At no time during Montero's employment did Defendants furnish Montero with notice of their intent to take any allowances or credits, including but not limited to tip and transportation allowances/credits, against the minimum wage.

60. Throughout her employment, Montero's salary failed to compensate her for her hours worked beyond the fortieth (40th) hour in each workweek at a rate one and one-half times (1.5x) her regular hourly rate.

61. Defendants committed all the foregoing acts and omissions against Montero, and their other employees, knowingly, intentionally, willfully, maliciously, and in bad faith.

## COLLECTIVE ACTION ALLEGATIONS

62. Plaintiff brings her FLSA claims on behalf of herself and all other current and former non-exempt workers employed by Defendants at Cozy Nail & Spa during the three (3) years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

## CLASS ALLEGATIONS

63. Plaintiff brings her state-law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), on behalf of himself and all other current and former

non-exempt workers employed by Defendants at Cozy Nails & Spa during the two (2) years preceding the filing of this Complaint, through entry of judgment in this case (the "Class").

64. The Class members are readily ascertainable. The Class members' number, names, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under Rule 23.

**NUMEROSITY**

65. The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

66. Although the precise number of such persons is unknown, and the facts on which the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

**COMMONALITY**

67. There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including:

   a. whether Defendants employed the Class members within the meaning of Connecticut law;

   b. whether the Class members were paid at least the minimum wage for all hours they worked;

   c. whether the Class members who worked overtime were paid time-and-a-half for their overtime hours; and/or

   d. at what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Class members?

**TYPICALITY**

68. Plaintiff's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

69. All the Class members were subject to the same policy and practice of denying minimum wage for all hours worked and pay at one and one-half times their regular hourly rates for overtime hours worked.

70. Defendants' policy and practice affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

71. Plaintiff and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policy and practice.

**ADEQUACY**

72. Plaintiff is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

73. Plaintiff is represented by attorneys who are experienced and competent in representing plaintiffs in both class actions and wage-and-hour employment litigations.

**SUPERIORITY**

74. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against an entity defendant.

75. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

76. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

77. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

78. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

79. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

80. Upon information and belief, Defendants and other employers throughout the state violate the CMWA.

81. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, especially where retaliation against one of their number has already taken place.

82. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

83. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

**CAUSES OF ACTION**

**COUNT I.**
**VIOLATION OF 29 U.S.C. § 207(a)(1)—FAILURE TO PAY OVERTIME BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY**

84. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

85. 29 U.S.C. § 207(a)(1) provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is… employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

86. 29 C.F.R. § 778.112 provides that "[i]f the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek."

87. Throughout her employment, Plaintiff's daily salaries failed to compensate her for her hours beyond the fortieth (40th) hour each week at a rate one and one-half times (1.5x) her regular hourly rate.

88. Throughout her employment, Plaintiff was a manual worker and was not exempt from overtime under 29 U.S.C. § 213.

89. 29 U.S.C. § 216(b) provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

90. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Plaintiff and the Collective overtime.

**COUNT II.**
**VIOLATION OF CONN. GEN. STAT. § 31-58(i)(1)—FAILURE TO PAY MINIMUM WAGE**
**BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY**

91. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

92. Conn. Gen. Stat. § 31-60(a) provides that "any employer who pays or agrees to pay an employee less than the minimum fair wage… shall be deemed in violation of the provisions of this part."

93. Conn. Gen. Stat. § 31-58(i) provides that the "'[m]inimum fair wage' in any industry or occupation in this state means: (1)… effective July 1, 2022, not less than fourteen dollars per hour, and effective June 1, 2023, not less than fifteen dollars per hour. On October 15, 2023, and on each October fifteenth thereafter, the Labor Commissioner shall announce the adjustment in the minimum fair wage which shall become the new minimum fair wage and shall

be effective on January first immediately following. On January 1, 2024, and not later than each January first thereafter, the minimum fair wage shall be adjusted by the percentage change in the employment cost index, or its successor index, for wages and salaries for all civilian workers, as calculated by the United States Department of Labor, over the twelve-month period ending on June thirtieth of the preceding year, rounded to the nearest whole cent."

94. On and after January 1, 2024, Connecticut's minimum wage was fifteen dollars and sixty-nine cents per hour ($15.69/hour).

95. Throughout the period relevant to this lawsuit, Montero's salary amounted to a regular hourly wage of eleven dollars and eight cents per hour ($11.08/hour).

96. Throughout the period relevant to this lawsuit, pursuant to Conn. Gen. Stat. § 31-60(b)(3), the maximum tip credit permitted to Defendants (as employers outside the hotel and restaurant industry) was thirty-five cents per hour ($0.35).

97. Throughout the period relevant to this lawsuit, Plaintiff's regular hourly wage amounted to less than the Connecticut minimum wage minus the maximum tip credit.

98. However, Defendants, by virtue of failing to give Plaintiff any notice of their intent to claim a tip or any other credit, were not entitled to claim a tip credit or any other credit against the minimum wage.

99. Conn. Gen. Stat. § 31-68(a)(1) provides that "[i]f any employee is paid by his employer less than the minimum fair wage… to which he or she is entitled under sections 31-58, 31-59 and 31-60 or by virtue of a minimum fair wage order he or she shall recover, in a civil action, (A) twice the full amount of such minimum wage… less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court, or (B) if the employer establishes that the employer had a good faith belief that the underpayment of

such wages was in compliance with the law, the full amount of such minimum wage… less any amount paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court."

100. Defendants knowingly, willfully, and maliciously disregarded the provisions of the CMWA by failing to pay Plaintiff and the Class minimum wage.

## COUNT III.
### VIOLATION OF CONN. GEN. STAT. § 31-76c—FAILURE TO PAY OVERTIME BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY

101. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

102. Conn. Gen. Stat. § 31-76c provides that "[n]o employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

103. Throughout her employment, Plaintiff's daily salaries failed to compensate her for her hours beyond the fortieth (40th) hour each week at a rate one and one-half times (1.5x) her regular hourly rate.

104. Throughout her employment, Plaintiff was a manual worker and was not exempt from overtime under Conn. Gen. Stat. § 31-76i.

105. Conn. Gen. Stat. § 31-68(a)(1) provides that "[i]f any employee is paid by his employer less than the… overtime wage to which he or she is entitled under sections 31-58, 31-59 and 31-60 or by virtue of a minimum fair wage order he or she shall recover, in a civil action, (A) twice the full amount of such… overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court, or (B) if

the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law, the full amount of such… overtime wage less any amount paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court."

106. Defendants knowingly, willfully, and maliciously disregarded the provisions of the CMWA by failing to pay Plaintiff and the Class overtime.

## **DEMAND FOR TRIAL BY JURY**

107. Plaintiff demands a trial by jury on all matters so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment providing the following relief:

a. At the earliest practicable time giving notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants at Sweet Basil as non-exempt workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied overtime;

b. A declaratory judgment that the practices complained of herein are unlawful under FLSA and CMWA;

c. An injunction against LLC Defendant, its members, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

d. An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and any opt-ins under the FLSA;

  e. An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to Plaintiff and the Class under the CMWA;

  f. An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and the Class under the CMWA;

  g. An award of reasonable attorneys' fees and costs; and

  h. Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated: Flushing, NY
   December 16, 2024

              TROY LAW, PLLC
              *Attorneys for Plaintiff*

              */s/ John Troy*
              John Troy, Esq.
              Aaron B. Schweitzer, Esq.
              Tiffany Troy, Esq.
              41-25 Kissena Boulevard
              Suite 110
              Flushing, NY 11355
              (718) 762-1324
              troylaw@troypllc.com